# 19-3218-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JOHN ORLANDO BROOKER, JR., ZACHARY ADAM GRANT, MICHAEL ROBERT ROSS, JR., GRAYTZ MORRISON, AKA SPACE, AKA SPIZZY, DONALD CHRISTOPHER PERKINS, JR., AKA D.P., SHAWN A. FRANCIS, AKA S.O., ALAN HORICK, GREGORY FLAKE, AKA TONE, THOMAS LUZADER, JERIMIAH JOEL DURFEE, AKA J-FRO, LAMAR LARRY JOHNSON, AKA BLUB, WILLIAM COREY WARNER, DANIEL F. WEBSTER, JR., AKA D2, MILES EDWARDS, JULIAN VICTOR DATIL-RODRIGUEZ, BRIAN KEITH DOMINGO, AKA BRAWLI, AKA GHOST FACE, LEROY J. RICE, AKA KINFOLK, DANIEL LUGO, AKA FAT ANTHONY, NOEL DELAROSA, EVELIO BARO, MOISES ORTIZ, ANTOINE MATHIS,

*Defendants,*

*and*

JEREMY D. ZULLO,

*Defendant-Appellant.*

———————————

*On Appeal from the United States District Court
for the District of Vermont*

## REPLY BRIEF AND SUPPLEMENTAL APPENDIX
## FOR DEFENDANT-APPELLANT

PETER J. TOMAO, ESQ.
*Attorney for Defendant-Appellant*
600 Old Country Road, Suite 328
Garden City, New York 11530
516-877-7015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                              ii

PRELIMINARY STATEMENT                                            1

SUMMARY OF ARGUMENT                                              1

ARGUMENT                                                        2

POINT I      STANDARD OF REVIEW                                  2

POINT II     SENTENCING GUIDELINE 1B1.13                         4
             POLICY STATEMENT IS NOT BINDING
             ON THE DISTRICT COURT RULING ON
             A COMPASSIONATE RELEASE MOTION

POINT III    MR. ZULLO RELIES ON THE ARGUMENTS                  15
             IN THE MAIN BRIEF IN ADDITION TO THE
             ARGUMENTS IN THIS REPLY BRIEF

CONCLUSION                                                      16

# TABLE OF AUTHORITIES

**CASES**                                                                   Page

*Dillon v. United States*,                                                  10, 11,
        560 U.S. 817 (2010)                                                 12, 13

*Stinson v. United States*,                                                 9
        508 U.S. 36 (1993)

*United States v. Almontes*, No. 3:05-cr-58 (SRU),                          10
        2020 U.S. Dist. LEXIS 62524 (D. Conn. Apr. 9, 2020)

*United States v. Brown*,                                                   9
        411 F. Supp. 3d 446 (S.D. Iowa 2019)

*United States v. Cantu*, No. 1:05-CR-458-1,                                10
        2019 U.S. Dist. LEXIS 100923(S.D. Tex. June 17, 2019)

*United States v. Christie*,                                                2, 3
        736 F.3d 191 (2d Cir. 2013)

*United States v. Crinel*, No. CR 15-61,                                    9
        2020 U.S. Dist. LEXIS 33353 (E.D. La. Feb. 27, 2020)

*United States v. Daugerdas*, No. 09cr581,                                  11
        2020 U.S. Dist. LEXIS 77658 (S.D.N.Y. May 1, 2020)

*United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC)                      10, 11
        2020 U.S. Dist. LEXIS 3746 (S.D.N.Y. Jan. 8, 2020)

*United States v. Echevarria*, No. 3:17-cr-44 (MPS),                        10
        2020 U.S. Dist. LEXIS 77894 (D. Conn. May 4, 2020)

*United States v. Lynn*, No. 89-0072-WS,                                    10
        2019 U.S. Dist. LEXIS 135987 (S.D. Ala. Aug. 12, 2019)

*United States v. Maumau*, No. 2:08-CR-00758-TC-11,       10, 15
      2020 U.S. Dist. LEXIS 28392 (D. Utah Feb. 18, 2020)

*United States v. Millan*, No. 91-CR-685 (LAP),       12
      2020 U.S. Dist. LEXIS 59955 (S.D.N.Y. Apr. 6, 2020)

*United States v. Rivernider*, No. 3:10-CR-222(RNC)       10
      2019 U.S. Dist. LEXIS 137134 (D. Conn. Aug. 14, 2019)

*United States v. Young*, No. 2:00-CR-00002-1,       8, 9
      2020 U.S. Dist. LEXIS 37395 (M.D. Tenn. Mar. 4, 2020)

## STATUTES

First Step Act of 2018,       *Passim*
      P.L. 115-391 section 603 (Dec. 21, 2018)

18 U.S.C. § 3553(a)       5, 12

18 U.S.C. § 3582(c)       5, 7

18 U.S.C. § 3582(c)(1)       3, 4, 9,
           11, 12,
           13

18 U.S.C. § 3582(c)(l)(A)       5, 6, 8

18 U.S.C. § 3582(c)(l)(A)(i)       1, 2, 5

18 U.S.C. § 3582(c)(2)       3, 4, 11,
           12, 13

28 U.S.C. § 994(t)       6

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. §1B1.10                                          12

U.S.S.G. §1B1.10(b)(1)                                    11, 12

U.S.S.G. §1B1.10(b)(2)(A)                                 12

U.S.S.G. §1B1.13                                          *passim*

U.S.S.G. §1B1.13 Application Note 1                       6

U.S.S.G. §1B1.13 Commentary                               9

## STATUTORY MATERIALS

164 Cong. Rec. S7314-02 (Dec. 5, 2018)                   8

S.Rep.No. 98-225 (1983)                                  5

## CODE OF FEDERAL REGULATIONS

28 C.F.R. pt. 571, subpt. G                              11

## OTHER AUTHORITIES

Bureau of Prisons, Program Statement 5050.50 entitled    11
        "Compassionate Release/Reduction in Sentence:
        Procedures for Implementation of 18 U.S.C. §§ 3582
        and 4205(g)"

## PRELIMINARY STATEMENT

Jeremy Zullo respectfully submits this brief in reply to the government's brief filed on March 26, 2020 ("GB"),[1] opposing the arguments made in our main brief filed on January 17, 2020 ("MB").

Contrary to the arguments of the government, this Court should vacate the order entered on September 23, 2019, by Chief Judge Geoffrey Crawford and remand the case to the lower court for further proceedings to determine whether the lower court should grant Mr. Zullo's motion for compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i) and the First Step Act of 2018 (FSA).

## SUMMARY OF ARGUMENT

As set forth in our main brief, the lower court erred by applying an outdated policy statement to deny Mr. Zullo's compassionate release motion. Rather than addressing this argument, the government argues that this Court should affirm the lower court's ruling based on

---

[1] "GB" followed by numbers refers to pages in the government's brief filed on March 26, 2020. "MB" refers to our main brief filed on January 17, 2020. "A" followed by numbers refers to pages in the Appendix filed with the main brief. "GSA" followed by numbers refers to pages in the Government's Supplemental Appendix filed with its brief. "SA" followed by numbers refers to pages in the Supplemental Appendix attached to this reply brief.

principles which were neither adopted by the lower court or by any other court and which would undo the clear Congressional purpose in enacting the FSA.

## ARGUMENT

## POINT I

## STANDARD OF REVIEW

This Court should review the September 23, 2019 Order *de novo* to determine whether Judge Crawford properly applied the law in this case. Since, as we argued in our main brief, the lower court erred by finding that U.S.S.G. § 1B1.13 was binding, the order should be vacated and remanded for further proceedings.

The government argues with authority that the Court reviews decisions on compassionate release motions first *de novo* to determine whether a defendant is eligible under the statute and then deferential abuse-of-discretion to the lower court's decision whether to grant a motion on the merits. GB 14. However, the case cited by the government did not deal with compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i) and the FSA. In *United States v. Christie*, 736 F.3d 191, 194 (2d Cir. 2013), this Court addressed a motion for a

sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on an amendment to the Sentencing Guidelines which the Sentencing Commission made retroactive. The government does not cite any cases and we are not aware of any in which this Court has defined its standard of review of orders denying motions for compassionate release pursuant to 18 U.S.C. § 3582 (c)(1).

Even under *Christie,* the determination of eligibility is a matter of statutory interpretation. 736 F.3d at 194. In the instant case, the district court found that Mr. Zullo was ineligible by erroneously applying the pre FSA standard in U.S.S.G. § 1B1.13. As a result of this error, the lower court did not properly reach the merits of Mr. Zullo's motion. Our main brief asked this Court to vacate the lower court's decision because it denied Mr. Zullo's application on the grounds that the reasons he asserted were "inconsistent with the legal standard for extraordinary and compelling circumstances developed by the Sentencing Commission" (A216), which standards we argued in our main brief were no longer legally binding on the district court.

## POINT II

## SENTENCING GUIDELINE 1B1.13 POLICY STATEMENT IS NOT BINDING ON THE DISTRICT COURT RULING ON A COMPASSIONATE RELEASE MOTION

Contrary to the government's argument, U.S.S.G. § 1B1.13 is not binding on the district court. The government acknowledges that this policy statement has not been revised since the FSA was enacted, GB 20, but argues that it is nevertheless binding on the courts.

In making this argument, the government conflates the law governing a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on a retroactive amendment to the Sentencing Guidelines and motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), as in the instant case.

The government ignores the fact that the FSA fundamentally amended the process by which district courts considered motions for compassionate release. As amended, the FSA ended the exclusive power of the government through the Bureau of Prisons to determine what factors a district court could consider. Under the FSA, a defendant may apply directly to the court subject only to an exhaustion provision not

relevant here. Once the BOP has acted or failed to act, it no longer has a role in the process beyond advising the government's attorney.

In his pro se motion to the district court, Mr. Zullo invoked the provision of the FSA which empowered the district court to reduce his term of imprisonment if it finds after considering the factors set forth in 18 U.S.C. § 3553(a) that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A)(i).

Congress never defined what constituted "extraordinary and compelling reasons" but considered 18 U.S.C. § 3582(c) would act as a safety valve to allow modification of sentence. See S.Rep.No. 98-225 at 52, 53 n 74 (1983) cited at GSA 8.

Where the district court erred was that it found that it was bound by U.S.S.G. § 1B1.13, which the Sentencing Commission promulgated before the FSA's enactment. Rather than in promulgating its own general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) as contemplated by 28 U.S.C. §

994(t)[2], the Sentencing Commission delegated the authority to determine what constituted extraordinary and compelling reasons to the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 Application Note 1. Clause (D), which has been referred to as the "catch-all clause," provides that the Director of the Bureau of Prisons would decide whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." The district court specifically applied this policy statement to deny Mr. Zullo's motion on the basis that the reasons he asserted were "inconsistent with the legal standard for extraordinary and compelling circumstances developed by the Sentencing Commission" (A216), which as we argued had deferred to the Director of the Bureau of Prisons.

Recently, Chief Judge Crawford himself held that he was incorrect in applying U.S.S.G. § 1B1.13 in the case on appeal in ruling on a

---

[2] 28 U.S.C. § 994(t) provides "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

subsequent motion which Mr. Zullo made, albeit unsuccessfully, for compassionate release based on the risk he faces from Covid-19. In denying that motion, Judge Crawford acknowledged that notwithstanding his ruling in the order which is the subject of the instant appeal that "section 3582(c) as amended by the First Step Act permits courts to make an independent determination of whether other reasons offered by a defendant support a determination of extraordinary and exceptional circumstances." SA 5 fn 2. Judge Crawford did not address in the April 28, 2020 Order whether he would have granted the motion if he had considered the grounds raised by Mr. Zullo in his first motion in addition to those raised in his subsequent motion.

Contrary to the government's argument, U.S.S.G. § 1B1.13 is no longer binding. The government acknowledges, as it must, that the Sentencing Commission has not revised this policy statement since the FSA was enacted in 2018 and conceded that "an amended guideline is unlikely to materialize." GB 20 (emphasis added). However, the government argues that the Sentencing Commission's amendment authority proceeds in cycles and is subject to Congressional review". GB

22. This argument itself ignores the fact that these cycles have come to a stop because the Commission does not have sufficient members to constitute a quorum.

Ironically, the government is correct when it states derisively that the "logical corollary of this juridical approach is that U.S.S.G. § 1B1.13 lost all force and effect on the day the First Step Act became law." GB 23. It did.

The government's argument that the U.S.S.G. § 1B1.13 continues to be applicable ignores Congress' stated intent in the First Step Act to "expand the use of compassionate release sentence reductions under § 3582(c)(1)(A)." *United States v. Young*, No. 2:00-CR-00002-1, 2020 U.S. Dist. LEXIS 37395, at *5 (M.D. Tenn. Mar. 4, 2020). Indeed, Congress titled the FSA subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release" 164 Cong. Rec. S7314-02 (Dec. 5, 2018) (statement by Senator Cardin, co-sponsor of the First Step Act, noting that its purpose was to "expand compassionate release" and "expedite[ ] compassionate release applications").

It is simply illogical to argue, as the government does, that Congress intended to leave the Bureau of Prisons as the gatekeeper to determine what constituted an extraordinary and compelling reason.

Rather, the clear Congressional purpose was to increase the use of compassionate release by empowering district judges to consider "the vast variety of circumstances that may constitute extraordinary and compelling." <u>See</u> *United States v. Crinel*, No. CR 15-61, 2020 U.S. Dist. LEXIS 33353 at *3 (E.D. La. Feb. 27, 2020) (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019)).

The commentary to § 1B1.13 is no longer binding on courts analyzing what constitutes "compelling and extraordinary" reasons because it conflicts with § 3582(c)(1). U.S.S.G. § 1B1.13 presumes that a compassionate release sentence reduction may only be granted upon the motion of the BOP Director under its own definitions. *United States v. Young*, 2020 U.S. Dist. LEXIS 37395 at *15 (M.D. Tenn. Mar. 4, 2020), <u>citing</u> *Stinson v. United States*, 508 U.S. 36, 38, (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

9

After the FSA's enactment, district courts have recognized that they have independent authority to determine whether "extraordinary and compelling" reasons exists to warrant a defendant's compassionate release. See *United States v. Cantu*, No. 1:05-CR-458-1, 2019 U.S. Dist. LEXIS 100923, at *5 (S.D. Tex. June 17, 2019). See, e.g., *United States v. Rivernider*, No. 3:10-CR-222(RNC), 2019 U.S.Dist.LEXIS 137134 (D.Conn. August 14, 2019); *United States v. Maumau*, 2020 U.S. Dist. LEXIS 28392 at *2 (D. Utah Feb. 18, 2020). Just this week, District Judge Michael Shea held that "the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete." *United States v. Echevarria*, No. 3:17-CR-44 (MPS), 2020 U.S. Dist. LEXIS 77894, at *4 (D. Conn. May 4, 2020). But see, *United States v. Lynn*, No. 89-0072-WS, 2019 U.S. Dist. LEXIS 135987, at *13 (S.D. Ala. Aug. 12, 2019). In *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 U.S. Dist. LEXIS 62524, at *6 n.5 (D. Conn. Apr. 9, 2020), the district court rejected the government's arguments based on *Dillon v. United States* and *United States v. Lynn*.

While District Judge Valerie Caproni ruled in the case cited by the government, *United States v. Ebbers,* that the Sentencing Commission's

definition of extraordinary and compelling reasons remained "current" *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 U.S. Dist. LEXIS 3746, at *13 (S.D.N.Y. Jan. 8, 2020),[3] a number of district courts have rejected this view recently, see, e.g., *United States v. Daugerdas*, No. 09CR581, 2020 U.S. Dist. LEXIS 77658, at *6 (S.D.N.Y. May 1, 2020)(holding that Judge Caproni's analysis was "inconsistent with the spirit of the First Step Act").

Contrary to the government's arguments, the Supreme Court's decision in *Dillon v. United States*, 560 U.S. 817, 821 (2010), does not require a different result. *Dillon* dealt with a different statutory provision, namely § 3582(c)(2), and a different guideline, namely, U.S.S.G. § 1B1.10(b)(1), which are substantially different from the compassionate release provisions in § 3582(c)(1) and U.S.S.G. § 1B1.13.

18 U.S.C. § 3582(c)(2) authorizes a district court to reduce an otherwise final sentence that is based on a guideline provision which

---

[3] Judge Caproni noted that after the FSA's enactment, the BOP Program Statement 5050.50, cited by the government in this case, was "inapposite" "because no statute directs the Court to consult the BOP's rules or guidelines, see 28 C.F.R. pt. 571, subpt. G, and no statute delegates authority to the BOP to define the statutory requirements for compassionate release." *United States v. Ebbers,* 2020 U.S. Dist. LEXIS 3746, at *13 n.6.

the Sentencing Commission has amended and made retroactive. The statute provides that "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission." The relevant policy statement, U.S.S.G. § 1B1.10, instructs courts proceeding under § 3582(c)(2) to substitute the amended guidelines range while "leav[ing] all other guideline application decisions unaffected." § 1B1.10(b)(1). Under § 3582(c)(2), a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted "after considering the factors set forth in section 3553(a) to the extent that they are applicable." Except in limited circumstances, however, § 1B1.10(b)(2)(A) forecloses a court acting under § 3582(c)(2) from reducing a sentence "to a term that is less than the minimum of the amended guideline range." See, *Dillon v. United States*, 560 U.S. at 821-22. In contrast, Congress did not include a mandatory minimum limitation in § 3582(c)(1). Recently, in *United States v. Millan*, No. 91-CR-685 (LAP), 2020 U.S. Dist. LEXIS 59955 (S.D.N.Y. Apr. 6, 2020), District Judge Loretta Preska granted a compassionate release motion made by a defendant serving a mandatory life sentence for narcotics trafficking.

The district court's power under § 3582(c)(2) depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive. *Dillon v. United States*, 560 U.S. at 826. As the *Dillion* Court stated, "§ 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." 560 U.S. at 828.

Since the district court's power under § 3582(c)(1)[4] is derived not from a Guideline amendment but from the statute itself, it simply does not follow that a guideline which predates that statute limits the court's discretion.

Since motions under § 3582(c)(2) are, by definition, based on amendments to the guidelines, there is no possibility that guidelines provisions would be outdated. In contrast, as we see in this case, § 3582(c)(1) was amended by Congress not by the Commission so that existing guidelines may be anachronistic and no longer be applicable.

---

[4] § 3582(c)(1) proceedings are not sentencings to which the guidelines are binding but proceedings to provide relief for sentenced prisoners in cases involving certain enumerated circumstances including extraordinary and compelling reasons.

The government's argument that this Court should affirm the September 29, 2019 order by "invalidat[ing] or ignor[ing]" the offending portions of the policy statement while preserving the balance fails for two reasons:  First, the lower court did not make this ruling and second, the government's proposed approach would only delete the provision requiring the BOP to make the motion  which is clearly anachronistic after the FSA, without addressing the provision which delegates the decision-making of other reasons to the Director of the Bureau of Prisons. The government argues without citation that "Congress did not mean to abrogate the rest of the guideline." GB 25 fn. 5. Of course, this is nonsense. The express purpose of this provision of the FSA was to end the BOP's tyranny over compassionate release applications.

The government's arguments are more appropriate for the district court. For example, it argues that motions for release should rarely be given and cites to availability of presidential pardons or commutations to redress sentencing disparities.

The government cites no authority to support its argument that that the lower court would have abused its discretion if it had granted Mr. Zullo's application for compassionate release (GB 34) and asks this

Court to "roundly repudiate" a reading of the FSA that gives judges license to second guess sentencing determinations under compassionate release rubric (GB 31). These arguments go far beyond the issues in the instant appeal.

For example, the government argued that the district court would have abused its discretion by considering length of Mr. Zullo's sentence but acknowledged that some courts have done just that. (GB 33 <u>citing</u> <u>United States v. Maumau</u>, 2020 U.S. Dist. LEXIS 28392 at *2.)

## POINT III

## MR. ZULLO RELIES ON THE ARGUMENTS IN THE MAIN BRIEF IN ADDITION TO THE ARGUMENTS IN THIS REPLY BRIEF

## CONCLUSION

For the reasons stated above and in our main brief, this Court should reverse and vacate the order of the district court entered on September 23, 2019, and remand this case to the district judge for further proceedings.

Dated:  Garden City, New York
        May 7, 2020

Respectfully submitted,

/s/ *Peter J. Tomao*

PETER J. TOMAO, ESQ.
(PT6409)
Attorney for Defendant-
Appellant Jeremy Zullo
600 Old Country Road, Suite 328
Garden City, New York 11530
(516) 877-7015

16

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney certifies that the foregoing reply brief complies with the requirements of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Local Rule 32.1(a)(4)(A) of the Local and Internal Operating Procedures of the United States Court of Appeals for the Second Circuit. The typeface used was 14 Point Century. According to the word processing system used to prepare this brief, the number of words in the brief is 2871.

Dated:  Garden City, New York
May 7, 2020

Respectfully submitted,

/s/ *Peter J. Tomao*

Peter J. Tomao, Esq.
Attorney for Defendant-
Appellant Jeremy Zullo
600 Old Country Road, Suite 328
Garden City, New York 11530
(516) 877-7015

SUPPLEMENTAL APPENDIX

**Table of Contents**

**Page**

Order of the Honorable Geoffrey W. Crawford on
    Emergency Motion for Compassionate Release,
    dated April 28, 2020 ........................................................ SA1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cr-64-2 |
| | ) | |
| JEREMY D. ZULLO, | ) | |
| Defendant. | ) | |

## ORDER ON EMERGENCY MOTION FOR COMPASSIONATE RELEASE
### (Doc. 1455)

This case returns with an Emergency Motion for Compassionate Release filed on March 26, 2020. (Doc. 1455). The Government has filed an opposition. (Doc. 1459). The court held a motion hearing by telephone on April 20, 2020.

### Procedural History

Defendant Jeremy Zullo first filed a Motion to Modify Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on July 25, 2019. (Doc. 1442). The Government filed an opposition. (Doc. 1445). On September 23, 2019, the court denied the motion to modify sentence. The court ruled that the motion raised issues concerning the excessive length of defendant's mandatory minimum sentence, his age at the time of sentencing, and his rehabilitation in prison. (Doc. 1450). In the court's view, these factors alone were an insufficient basis for a finding of extraordinary and compelling circumstances. The court denied the motion to modify sentence by order dated September 23, 2019. (Doc. 1450.) That decision is on appeal.

On March 19, 2020, defendant filed an "Inmate Request regarding a Compassionate Release/Reduction in Sentence" with the warden at FCI Berlin where he is currently housed. (Doc. 1463-1). The warden denied the request on April 10, 2020. The denial describes the aggregate 180-month sentence and states that "your possession of a firearm in relation to a drug trafficking crime illustrates an underlying propensity for violence." It describes sanctions for "possession of a cellphone, circumventing the electronic mail correspondence system, and smoking." These violations were said to "demonstrate a potential safety risk to others and the community." (Doc. 1463-2.)

1

The warden also addressed the medical issue presented by the COVID-19 emergency. "In addition, based on the review of your current medical care level, your lack of risk factors for COVID-19, and our current number of zero cases, we will not be pursuing a request for compassionate release at this time."  (Doc. 1463-2.)

The court held a hearing by telephone concerning the pending motion on April 20, 2020. Counsel for defendant and the Government participated.  Defendant also took part.  The parties agree that defendant has satisfied the exhaustion requirement which appears at 18 U.S.C. § 3582(c)(1)(A).

### History of Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)

The Sentencing Reform Act, enacted as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, greatly altered federal sentencing practices.  It created the United States Sentencing Commission and initiated the guidelines for sentencing procedures which remain in effect today.  It abolished federal parole for most defendants and reduced the availability of "good time."

In lieu of parole, the Sentencing Reform Act included a provision for compassionate release, codified at 18 U.S.C. § 3582(c), permitting a reduction of sentence under four circumstances:

- Defendants over 70 years of age who have served at least 30 years in prison and present no danger to others;
- Motions under Fed. R. Crim. P. 35 or as otherwise permitted by statute;
- Retroactive application of a reduction in sentencing guideline range;
- "extraordinary and compelling reasons."

Defendant seeks relief under the extraordinary and compelling category.

As originally enacted, a reduction for extraordinary and compelling reasons was subject to three important limitations.  The motion could only be filed by the Director of the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).  It could only be granted if "consistent with applicable

policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).[1]  It could not be granted solely on the basis of rehabilitation of the defendant.  28 U.S.C. § 994(t).

In 2007, the Sentencing Commission issued Guideline § 1B1.13 to provide guidance for sentence reduction under section 3582(c)(1)(A).  The Guideline provision provides for a sentence reduction or related relief if "extraordinary and compelling reasons warrant the reduction" or the defendant is over 70 years old and has served at least 30 years.  In either event, modification is conditioned on a finding that the defendant is not a danger to the safety of others or the community and that "the reduction is consistent with this policy statement."

Substantive guidance about the meaning of "extraordinary and compelling reasons" appears in the Application Note which provides four circumstances under which extraordinary and compelling reasons may exist:

- Terminal illness or serious medical conditions substantially diminishing the ability of the defendant to provide self-care;
- Age over 65 with serious deterioration of health and completion of 10 years or 75 percent of the term of imprisonment;
- Death or incapacitation of the caregiver of the defendant's minor children;
- Other reasons as determined by the Director of the Bureau of Prisons.

When Guideline § 1B1.13 issued, the Bureau of Prisons exercised exclusive authority over the decision to file a motion for sentence modification.  The catch-all provision for "other reasons" could be satisfied by BOP's determination that these reasons were present in a particular case.

The difficulty with the compassionate release program as originally enacted and as further developed by guidance from the Sentencing Commission was that in exercising exclusive authority over the process, the Bureau of Prisons rarely filed a motion for a sentencing reduction. In testimony before the Sentencing Commission in 2016, Michael Horowitz, Inspector General, Department of Justice stated that until 2013, an average of 24 inmates were released each year

---

[1] 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

through the BOP program out of a federal prison population of approximately 220,000. Following complaints about the small number of successful applications, the Bureau of Prisons increased the average number of motions filed with sentencing courts to 83 for the period August 2013 – September 2014.  Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Commission (2016) (statement of Michael E. Horowitz).

In 2018, Congress returned to the issue of compassionate release.  The First Step Act of 2018 removed the requirement that the Bureau of Prisons must file the motion for sentence reduction. Subject only to a 30-day exhaustion requirement, defendants are permitted to file motions directly with the sentencing court.  The purpose of the legislation was to increase the availability of compassionate release.  *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019).

The First Step Act did not alter the language in § 3582(c)(1) requiring that any reduction of consistent be "consistent with applicable policy statements issued by the Sentencing Commission."  Nor did it change the language of 28 U.S.C. § 994(t) calling on the Sentencing Commission to promulgate general policy statements describing "what should be considered extraordinary and compelling reasons for sentence reduction."  The Sentencing Commission, moreover, has not altered the language of its Application Note restricting the category of "other reasons" to those determined by the Bureau of Prisons.

On January 17, 2019, the Bureau of Prisons issued Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582 and 4205(g).  This Statement reflects the enactment of the First Step Act and provides detailed criteria governing motions for sentence reduction filed on grounds of terminal or progressive illness, age over 65, and loss of family member caregivers.  These are the criteria previously identified by the Application Note.  BOP's Program Statement contains no guidance on when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [already] described."  *See* Application Note, USSG § 1B1.13.

The delegation of the definition of "other reasons" by Congress to the Sentencing Commission and by the Sentencing Commission to the Bureau of Prisons has not been a resounding success.  It is as if Tinkers, Evers, and Chance attempted their double play without actually throwing the ball.  The puzzle for the federal courts has been how to identify

4

"extraordinary and compelling reasons" beyond those already described by Guideline § 1B1.13 and its accompanying Application Note.

The Government takes the position that the omission of any description of "other reasons" by BOP limits the bases for sentence reduction to the illness and family circumstances already identified in the Application Note and Program Statement 505.50.  "…Program Statement 5050.50, amended expressly in light of the First Step Act, does not allow release in cases not presenting extraordinary health, age or family-related issues.  In a case like this one, then, as the Supreme Court made clear in *Dillon*, the Sentencing Commission's Policy Statement is binding on this court."  (Doc. 1445 at 12.)

The defense position is the opposite.  Defendant points to § 571.61(a)(1) of Program Statement 5050.50 which requires the inmate's request for relief under § 3852(c)(1)(A) to contain "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration."  Defendant argues that subject to the exhaustion requirement, "§ 3582(c)(1)(A)(i) permits a reduction in sentence for any extraordinary and compelling reason(s)."  (Doc. 1446 at 3.)

Trial courts have divided over whether the Bureau of Prisons retains exclusive authority to define additional extraordinary and compelling reasons for sentence reduction.  *Compare United States v. Rodriguez*, 2020 WL 1627331*2 (E.D. Pa. April 1, 2020) ("I conclude (1) that the Court may independently assess whether 'extraordinary and compelling reasons exists…" with *United States v. Ebbers*, 2020 WL 91399 *4 (S.D.N.Y. January 8, 2020) ("Congress did not revise the statute's substantive text or alter the USSC's authority to define 'extraordinary and compelling reasons…Thus, U.S.S.G. § 1B1.13's description of 'extraordinary and compelling reasons' remains current, even if references to the identity of the moving party are not."). [2]

---

[2] Previously faced with this issue in defendant's original motion, this court sought to have it both ways.  "The court rejects Zullo's argument that the [First Step Act] removing the requirement of a BOP motion also removed the substantive effect of USSG § 1B1.13…The standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary."  In hindsight, this resolution is not very satisfactory.  Either the authority to determine the substantive criteria for compelling circumstances is still delegated to the Bureau of Prisons or it is not.  After giving the matter more thought, the court concludes that section 3582(c) as amended by the First Step Act permits courts to make an independent determination of whether other reasons offered by a defendant support a determination of extraordinary and exceptional circumstances.  The COVID-19 emergency – not contemplated and hard to imagine at the time of the court's prior ruling – is an example of an

Prior to the COVID-19 emergency, the Bureau of Prisons took no steps to identify "other reasons" why compassionate release could be appropriate beyond the advancing age, medical condition, and loss of caregiver circumstances specifically identified in § 3582(c)(1). *See* 28 CFR Part 571, Subpart G; Federal Bureau of Prisons Program Statement 5050.50.

The COVID-19 emergency has changed the landscape of compassionate release once again. As of April 22, 2020, the Bureau of Prison's website states that 566 federal inmates and 342 staff have been confirmed positive test results with 24 inmate deaths.  Infection has been detected at eight facilities throughout the country.

The Bureau of Prisons chose home confinement as a mechanism to quickly reduce the prison population and reduce the risk of infection.  Home confinement is not the same as compassionate release.  It is governed by 18 U.S.C. § 3624(c)(2).  Until recent months, it was a limited remedy permitting release within the lesser of six months or ten percent of the term of the sentence. Section 12003(b)(2) of the CARES Act, Public Law No. 116-136, signed into law on March 27, 2020, greatly expanded the Bureau of Prison's discretionary authority to release prisoners earlier to home confinement.  Home confinement does not require judicial approval.

In a Memorandum addressed to the Director of the Bureau of Prisons dated March 26, 2020, Attorney General Barr drew attention to the incarceration of "some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  He issued the memorandum "to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody."  AG Memorandum dated March 26, 2020.  Since the date of Attorney General Barr's memo, the Bureau of Prisons website reports the release of an additional 1,440 inmates on home confinement.

Compassionate release motions have now begun to reach the courts in great numbers. Unsurprisingly, results vary widely.  Some courts have denied such motions on the ground that the risk of infection does not fall within the Sentencing Commission's enumerated bases for relief.  *United States v. Eberhart*, 2020 WL 1450745 (N.D. Cal. March 25, 2020).  Other courts

---

additional circumstance, never addressed by the Sentencing Commission or BOP, which a sentencing court may consider in deciding whether there are "other reasons" supporting compassionate release.

6

have reduced the sentences of defendants identified as being at especially high risk of complications or death due to factors of age, diminished immune system, hypertension, heart disease and other conditions recognized as placing a patient at much greater risk of death.  *See United States v. Scparta*, 2020 WL 1910481 (S.D.N.Y. April 20, 2020).  A third group has determined that the list of reasons provided by the Sentencing Commission for compassionate release is not exclusive, particularly because the Commission has not amended its Note since passage of the First Step Act and because the Note retains anachronistic references to a regulatory system in which the Bureau of Prisons exercised control over the filing of motions for sentence reduction.  *See United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020) (pre-COVID case)("…[T]he court joins the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement."

This court will also exercise independent judgment in deciding whether the COVID-19 emergency presents an extraordinary and compelling reason for sentence reduction, even if that reason has not been specifically identified in guidance from the Sentencing Commission.  There are several reasons for this decision.

First, events are moving quickly and bodies such as the Sentencing Commission are not holding meetings in-person or moving with customary dispatch.  Faced with exigent circumstances, the courts do not have the option of waiting for the Sentencing Commission to decide whether to amend the Application Note to address the circumstances under which the COVID-19 emergency may present an extraordinary and compelling reason for sentence reduction.

Second, the Application Note at issue delegates authority to the Bureau of Prisons to identify "other reasons" supporting compassionate release.  The Bureau of Prisons has not issued guidance on when "other reasons" might provide a basis for relief.  In the parallel area of release to home confinement, however, the Bureau of Prisons has acted swiftly in returning more than 1,400 low-risk prisoners to their homes to reduce the risk of infection.  Few in the nation now question that the COVID-19 emergency requires us to do business on different terms.  The Bureau of Prisons, led by the Attorney General and exercising authority granted by the CARES Act, has already expressed this view in expanding home detention.

Third, the intent of Congress in enacting the First Step Act was to broaden the availability of compassionate release and to remove the Bureau of Prisons as an institutional obstacle to the filing of a motion in federal court.  The exercise of judicial judgment in deciding which reasons – not otherwise identified in the statute – also justify compassionate release is consistent with this purpose of the First Step Act.

Fourth, "an interpretation of the old [Sentencing Commission] policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role…".  *United States v. Beck*, 2019 WL 2716505 *5-6 (M.D. N.C. June 28, 2019).   In other words, it is up to the Commission to bring its guidance current with the directive of Congress in the First Step Act.  It is not the role of the Commission to preserve the *ancien regime* by retaining guidance rendered obsolete by the legislative decision to expand compassionate release by allowing defendants to file motions for compassionate release directly with the courts.

For these reasons, the court joins the majority of trial court decisions described in *United States v. Maumau* in exercising independent judgment over the definition of whether the COVID-19 emergency constitutes an extraordinary and compelling reason for sentence reduction under § 3582.  Certainly, any ruling must be consistent with the guidance provided by the Sentencing Commission.  But where neither the Sentencing Commission nor the Bureau of Prisons has provided affirmative guidance, the court is obliged to develop its own criteria and make its own decision.

The court will decide whether extraordinary and reasons are present on the basis of the following criteria:

- Evidence of a defendant's increased susceptibility to COVID-19 complications.  The court takes judicial notice, based on saturating news coverage of statements by national and state health officials over the last 2 -3 months, that age over 60, obesity, hypertension, diabetes, pre-existing pulmonary problems, history of cancer, immune system disorders, and heart conditions, are frequently associated with severe or fatal courses of the disease.  This is not an exhaustive list.  A defendant is free to add evidence specific to his or her condition.
- Completion of at least 50 percent of a term of imprisonment.  Compassionate release at the outset of the sentence would undermine the original purpose of the sentence.

- A low level of risk of violence or recidivism.  Compassionate release should not harm the sentencing court's concerns for community safety and incapacitation which played a part in the original sentencing decision.
- A record of non-violent conduct and positive rehabilitation while incarcerated.
- An appropriate plan for home confinement or supervised release.

These criteria are not exclusive.  There may be additional factors in individual cases.  No single factor is decisive.  The court will seek to consider the factors together in reaching a decision.   The court has in mind that section 3582(c) requires separate consideration of whether release is consistent with the § 3553 factors underlying the original sentence.  At the risk of a certain amount of overlap, the court will consider this question separately.

The court turns to consider the application of the criteria defining extraordinary and compelling circumstances in defendant's case.

Defendant has been incarcerated since his self-report date of January 4, 2011, serving a fifteen-year mandatory minimum sentence.  He is scheduled for release in February 2024.  He is the father of a child.  His family, including his mother, lives in Rutland.  His mother is prepared to take him into her home.

Defendant suffers from ulcerative colitis which is an inflammatory bowel condition.  It is a chronic disease, not readily cured.  The literature on whether colitis renders a patient more vulnerable to COVID-19 is inconclusive.

Defendant is incarcerated at FCI Berlin in northern New Hampshire.  At the hearing on the motion, the Government represented that there have been no detected cases of COVID-19 at the prison, either among prisoners or corrections staff.

If COVID-19 makes an appearance at FCI Berlin, the close quarters and shared facilities place the prisoner and staff populations at an increased risk of transmission.  FCI Berlin does not operate at its full capacity of 1,152 medium security inmates and 128 minimum-security inmates in an adjacent camp.  The prison website currently reports a population of 668 inmates at the FCI and 52 inmates at the camp.

9

FCI Berlin is in Coos County, New Hampshire which is sparsely populated.  The New Hampshire Department of Health and Human Services weekly report dated April 20, 2020, reports two cases of COVID-19 in Coos County.  The court takes judicial notice of the extraordinary spread of the virus across the United States.

National data published on the Bureau of Prisons website states as of April 26, 2020, the federal prison system has experienced multiple cases of COVID-19 among prisoners and staff and 27 inmate deaths.  There are currently 142,654 prisoners (excluding people in halfway houses) and 36,000 staff members.  799 inmates and 319 staff members have tested positive.

The factors supporting a decision that extraordinary and compelling circumstances are present include the completion of 2/3 of defendant's sentence, the evidence of positive rehabilitation and the absence of evidence of violent or sexually abusive conduct.  Ten years after the detection and destruction of the drug conspiracy the risk to public safety if defendant's sentence is reduced is low, especially with the support of home confinement and conditions of supervised release.

The factor missing from defendant's motion is evidence that he is at significant increased risk of severe complications of COVID-19.  The risk of infection in an isolated FCI with no known cases is lower than in other federal facilities where infection is already present.  The condition of ulcerative colitis is a serious medical problem, but not one which is linked to the onset or severity of COVID-19.  Defendant has none of the conditions which are strongly associated with severe illness or death from the virus.

The court concludes that defendant has not demonstrated that his case qualifies for sentence reduction because he has not demonstrated the presence of extraordinary and compelling circumstances.  The court does not reach the second issue which is the review of § 3553 criteria.

## **<u>CONCLUSION</u>**

Defendant's Emergency Motion for Compassionate Release (Doc. 1455) is DENIED.

The Government's Motion to Dismiss or Hold in Abeyance the Emergency Motion for

Compassionate Release (Doc. 1460) is DENIED AS MOOT.

Dated at Burlington, in the District of Vermont, this 28th day of April, 2020.

*/s/* Geoffrey W. Crawford
Chief Judge
United States District Court

11